ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VII

| CHRISTIAN O. HERNÁNDEZ ACEVEDO<br><br>Recurrente<br><br>v.<br><br>RESPALDO DE AMOR LLC<br><br>Recurrido | KLRA202200623 | *Revisión Administrativa*<br><br>Número de Caso ante el Municipio Autónomo de Aguadilla<br>2022-433087-PU-143466<br><br>Sobre: Permiso Único de Uso Nuevo |
|---|---|---|

Panel integrado por su presidenta, la Juez Ortiz Flores, la Juez Brignoni Mártir y el Juez Candelaria Rosa.

Ortiz Flores, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 30 de enero de 2023.

El señor Christian Hernández Acevedo (Sr. Hernández; recurrente) nos solicita que revoquemos la *Resolución de Revisión Administrativa* emitida y notificada el 21 de octubre de 2022, por la Oficina de Gerencia de Permisos del Departamento de Desarrollo y Comercio (OGPe; Agencia). En el mencionado pronunciamiento, la Agencia refrendó la actuación del Municipio Autónomo de Aguadilla[1] (Municipio) al expedir el Permiso Único 2022-433087-PU-143466 (Permiso Único) a favor de Respaldo de Amor, LLC (Respaldo de Amor; parte recurrida).

Evaluadas las posturas de las partes y el ordenamiento jurídico aplicable, adelantamos que confirmamos la determinación administrativa impugnada.

**I**

El 19 de abril de 2022, el Municipio expidió el Permiso Único, según solicitado por Respaldo de Amor, con el propósito de establecer, en una residencia existente, un **Hospedaje Especializado**; en particular, un hogar

---

[1] Mediante el *Convenio de Transferencia de Facultades de la Junta de Planificación y la Administración de Reglamentos y Permisos por el Gobierno de Puerto Rico al Municipio Autónomo de Aguadilla*, de 15 de julio de 2010, se le otorgó al ayuntamiento recurrido las Jerarquías IV y V.

para seis adultos jóvenes con discapacidades físicas o intelectuales.[2] Surge del Permiso Único que el Distrito donde está ubicado el lote 12 de la Urbanización Paseos de Jaicoa, con una cabida de 448.8800 metros cuadrados, está calificado como **Residencial Intermedio**.

El Sr. Hernández, parte interventora en el procedimiento,[3] presentó una oportuna *Solicitud de Revisión Administrativa* ante la OGPe.[4] En los dos señalamientos de error expuestos, indicó estar en desacuerdo con la otorgación del Permiso Único y alegó que el Municipio no evaluó la solicitud de manera discrecional, sino ministerialmente. A su vez, planteó sus reservas acerca del flujo vehicular, el cual, según adujo, se afectaría por los ocho espacios de estacionamiento vislumbrados en el lote 12. Indicó que el flujo vehicular aumentaría con los empleados, pacientes, familiares y funcionarios relacionados con el proyecto de Respaldo de Amor.[5]

Del dictamen recurrido se desprende la participación de los litigantes en la vista administrativa celebrada el 1 de agosto de 2022. El Sr. Hernández declaró sobre su preocupación por la seguridad y el valor de las propiedades de la comunidad. Reconoció, sin embargo, que la zona en cuestión está en un Distrito de Calificación Residencial Intermedio y que no tenía conocimiento que, con el Permiso Único concedido, se hubiese transgredido alguna disposición reglamentaria.

Por la parte recurrida declaró el ingeniero José Ruiz Concepción, quien explicó que el uso de Hospedaje Especializado estaba permitido en el área calificada como Residencial Intermedio. Apuntó, además, que Respaldo de Amor contaba con el endoso del Departamento de Salud. Declaró también la proponente, Marielys Morales Morales, quien describió la estructura como una casa de tres habitaciones (dos personas por

---

[2] Apéndice del recurso, págs. 17-23. El permiso fue expedido el 19 de abril de 2022, pero notificado a la parte recurrente el 7 de junio de 2022.

[3] Refiérase al Apéndice del recurso, págs. 26-30.

[4] Apéndice del recurso, págs. 10-16.

[5] En la carta acogida como una solicitud de intervención, la parte recurrente abogó por la seguridad, tranquilidad y el valor de las propiedades. Apéndice del recurso, págs. 24-25.

dormitorio) y dos baños. Indicó que, en cada turno laboral, habría dos empleados junto al sexteto de residentes.

Examinada la prueba ofrecida por las partes, la OGPe confirmó la decisión del Municipio y declaró no ha lugar el petitorio de reconsideración. Concluyó que "**[e]l uso solicitado es permitido ministerialmente en el distrito en el que ubica la propiedad**".[6] Inconforme, el Sr. Hernández acudió ante este foro intermedio y como único error acotó que la OGPe erró al confirmar el Permiso Único sobre las bases del Reglamento Conjunto 2020, el cual afirmó adolecía de nulidad.[7]

**II**

**A**

Este Tribunal de Apelaciones tiene jurisdicción para la revisión judicial de las determinaciones finales administrativas emitidas por las agencias, como resultado de los procedimientos adjudicativos, por virtud de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAUG), Ley Núm. 38 de 30 de junio de 2017, 3 LPRA sec. 9601 *et seq*. La revisión judicial de las determinaciones finales administrativas se estatuye en la Sección 4.5 de la LPAUG, que dispone lo siguiente sobre nuestro alcance:

> El tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene **derecho a un remedio**.
>
> Las **determinaciones de hechos** de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en **evidencia sustancial** que obra en el expediente administrativo.
>
> Las **conclusiones de derecho serán revisables** en todos sus aspectos por el tribunal. 3 LPRA sec. 9675. (Énfasis nuestro.)

Como se sabe, los procedimientos y las decisiones de los organismos administrativos están cobijados por una **presunción de regularidad y corrección**. La norma general es que "las decisiones que

---

[6] Apéndice del recurso, pág. 8.

[7] Ostentamos jurisdicción porque dentro del término de noventa días, a partir de la presentación del recurso de reconsideración ante la OGPe, la Agencia prorrogó por justa causa el término para resolver a treinta días adicionales. Véase, Sección 3.15 de la *Ley de Procedimiento Administrativo Uniforme*, Ley 38-2017, 3 LPRA sec. 9655; Apéndice del recurso, pág. 6, acápite 26.

emiten las agencias de gobierno merecen una **amplia deferencia y respeto**, ya que estas poseen una vasta experiencia y un conocimiento especializado sobre los asuntos que por ley se les ha delegado." *JP Plaza Santa Isabel v. Cordero Badillo,* 177 DPR 177, 186 (2009) (Énfasis nuestro.) Acorde con ello, la revisión judicial no sustituirá de forma automática el criterio e interpretación del organismo administrativo. **La deferencia y presunción de corrección de la determinación administrativa únicamente se descartará cuando no exista fundamento racional que justifique el dictamen impugnado**. *Rolón Martínez v. Caldero López,* 201 DPR 26, 36 (2018).

Asimismo, "las determinaciones de hechos de una agencia se sostendrán si se fundamentan en evidencia sustancial que obre en el expediente administrativo." *JP Plaza Santa Isabel v. Cordero Badillo, supra*, a las págs. 186-187. El Tribunal Supremo de Puerto Rico ha pautado que "los tribunales no deben intervenir o alterar las determinaciones de hechos de un organismo administrativo 'si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad'." *Otero v. Toyota,* 163 DPR 716, 727-728 (2005). En cuanto a las conclusiones de derecho, estas serán revisables en todos sus aspectos por el foro apelativo. *Olmo Nolasco v. Del Valle Torruella*, 175 DPR 464, 469 (2009). Los tribunales, como conocedores del derecho, no tenemos que dar igual deferencia a las interpretaciones de derecho que hacen las agencias administrativas. *Id.*, a la pág. 470. Ahora bien, los foros judiciales tampoco podemos descartar liberalmente las conclusiones e interpretaciones de la agencia de las leyes y reglamentos que administran. Incluso, en los casos dudosos, y aun cuando pueda haber una interpretación distinta, "la determinación de la agencia merece deferencia sustancial". *JP Plaza Santa Isabel v. Cordero Badillo, supra*, a la pág. 187.

**B**

Bajo nuestro ordenamiento jurídico, la oportuna presentación de un recurso de revisión judicial y el cumplimiento con los reglamentos

aplicables, aunque esenciales, no son suficientes para autorizar la intervención judicial. Después de todo, la jurisdicción se define como "[e]l poder o la autoridad que posee un tribunal para atender y adjudicar casos o controversias". *Com. Alt. PNP v. CLE*, 196 DPR 289, 296 (2016). Esto implica que la intervención judicial no se puede ejercer en circunstancias donde exista "una disputa abstracta cuya solución no tendrá consecuencias para las partes". *Fund. Surfrider y otros v. A.R.Pe.*, 178 DPR 563, 572 (2010). A esos fines, al determinar la existencia de un caso o controversia, se han promovido varias doctrinas de autolimitación; entre estas, se evalúa la legitimación activa. *Muns. Aguada y Aguadilla v. JCA*, 190 DPR 122, 131 (2014). Conforme la aludida doctrina, el promovente de la acción debe cumplir con los requisitos siguientes: (1) que ha sufrido un daño claro y palpable; (2) **que el daño es real, inmediato y preciso, y no uno abstracto o hipotético**; (3) que la causa de acción surge bajo el palio de la Constitución o de una ley, y (4) que existe una conexión entre el daño sufrido y la causa de acción ejercitada. *P.P.D. v. Gobernador I*, 139 DPR 643, 666 (1995); seguido en 178 DPR, a la pág. 572. Al respecto, el Tribunal Supremo ha expresado que una **"controversia abstracta, ausente un perjuicio o amenaza real y vigente a los derechos de la parte que los reclama, no presenta el caso y controversia que la Constitución exige para que los tribunales puedan intervenir."** *Lozada Sánchez v. JCA*, 184 DPR 898, 916-917 (2012). (Énfasis nuestro.)

En el marco de un procedimiento adjudicativo ante una agencia, la Sección 4.2 de la LPAUG, *supra*, establece que existe legitimación activa estatutaria para presentar el recurso de revisión cuando la parte, o parte interventora,[8] (1) se vea adversamente afectada por una orden o resolución final de una agencia; y, (2) agote todos los remedios provistos por la agencia o por el organismo apelativo correspondiente. 3 LPRA sec. 9672. Ahora bien, el Tribunal Supremo ha opinado que el requisito de que la parte esté *adversamente afectada* por la decisión no equivale a que la actuación

---

[8] Véase, inciso (k) de la Sección 1.3 de la LPAUG, 3 LPRA sec. 9603 (k).

gubernamental meramente tenga un efecto sobre el litigante. Se exige que la acción administrativa impugnada mediante el recurso de revisión judicial cause **un daño o una lesión propia y particular**, de modo que la intervención judicial se dé en el contexto de una **controversia justiciable** con el propósito de dar un remedio al litigante. *Fund. Surfrider y otros v. A.R.Pe.*, *supra*, a las págs. 577-578. Reiteró el máximo foro que "[e]l daño tiene que ser claro, específico y no puede ser abstracto, hipotético o especulativo." *Id.*, a la pág. 579. Asimismo, el ordenamiento jurídico exige que el promovente de una revisión judicial tiene el peso de probar su legitimación en todas las etapas. *Muns. Aguada y Aguadilla v. JCA*, *supra*, a la pág. 136. Ello así porque es necesario distinguir al *participante* en el procedimiento administrativo de la *parte* para fines de la revisión judicial. "Es decir, **no todo el que participa en el procedimiento administrativo tiene legitimación activa para ser parte en la revisión judicial**." *Fund. Surfrider y otros v. A.R.Pe.*, *supra*, a las págs. 574-575. (Énfasis nuestro.)

**C**

La *Ley para la Reforma del Proceso de Permisos de Puerto Rico*, Ley Núm. 161 de 1 de diciembre de 2009 (Ley 161-2009), 23 LPRA sec. 9011 *et seq.*, se aprobó "a los fines de establecer el marco legal y administrativo que regirá la solicitud, evaluación, concesión y denegación de permisos por el Gobierno de Puerto Rico […]". Exposición de Motivos de la Ley 161-2009. El estatuto creó la Oficina de Gerencias de Permisos (OGPe) con el propósito principal de emitir determinaciones finales y permisos, licencias, inspecciones, certificaciones y cualquier otra autorización o trámite que sea necesario. La Ley 161-2009 dispuso también que los municipios con Jerarquías de la I a la V, mediante convenios a tales efectos, podrían recibir por delegación las funciones que pertenecían a la jurisdicción de agencias gubernamentales, entre ellas la Junta de Planificación.

En lo pertinente al caso del epígrafe, la Ley 161-2009 incluyó las siguientes definiciones:

**Áreas calificadas** — **terrenos comprendidos dentro de los límites de calificación** (antes zonificación) establecidos en los Mapas de Calificación adoptados por la Junta de Planificación conforme a sus facultades legales. Art. 1.05 (6), 23 LPRA sec. 9011. (Énfasis nuestro.)

.        .        .        .        .        .        .        .

**Distrito de calificación** — cada una de las **demarcaciones espaciales en las cuales se subdivide un territorio** para distribuir y ordenar los usos o edificaciones permitidas. Art. 1.05 (27), 23 LPRA sec. 9011. (Énfasis nuestro.)

.        .        .        .        .        .        .        .

**Permiso Único** — Permiso para el inicio o continuación de la operación de un negocio, construcción y/o actividad incidental al mismo en el que se **consolida permisos, licencias, autorizaciones o certificaciones**, el cual será expedido por la Oficina de Gerencia de Permisos, o los Municipios Autónomos con Jerarquía de la I a la V, conforme a lo dispuesto en el Capítulo VIII de esta Ley.[9] Art. 1.05 (59A), 23 LPRA sec. 9011. (Énfasis nuestro.)

En lo que atañe a la presente causa, el estatuto distingue las determinaciones *ministeriales* y *discrecionales*. A saber, una *determinación ministerial* no conlleva un juicio subjetivo ni discreción del ente adjudicador, sobre la forma en que se conduce o propone una actividad o acción. **El funcionario se limita a aplicar los requisitos específicos de las leyes o reglamentos a los hechos presentados, ya que esta determinación involucra únicamente el uso de estándares fijos o medidas objetivas**. Art. 1.05 (48), 23 LPRA sec. 9011. Por otra parte, la *determinación discrecional* conlleva un juicio subjetivo sobre la forma en que se conduce o propone una actividad o acción. Para ello, se utiliza el conocimiento especializado, la discreción y el juicio para llegar a una determinación, la cual considera otros asuntos además de los estándares fijos o medidas objetivas. Art. 1.05 (26), 23 LPRA sec. 9011.

**III**

Como cuestión de umbral, debemos mencionar que la parte recurrente en la presente causa omitió anejar al Apéndice del recurso la totalidad del expediente administrativo. Tampoco se presentó una transcripción de los testimonios vertidos en la vista administrativa. Ello así, porque el señor Hernández Acevedo **apoya su contención únicamente**

---

[9] Refiérase al Artículo 8.4A de la ley 161-2009, 23 LPRA sec. 9018c-1.

**sobre la alegación de que el Reglamento Conjunto 2020 fue declarado nulo por dos paneles fraternos, aun cuando dicho planteamiento jamás fue esbozado ante la Agencia recurrida**.

Es nuestro criterio que, con relación a la intervención ante este foro revisor, el Sr. Hernández no ha demostrado que esté adversamente afectado por la decisión que recurre en revisión judicial. Más allá de meras especulaciones, el recurrente no ha precisado cuál es el daño claro, palpable e inmediato, no abstracto o hipotético, ni el efecto adverso o a qué intereses el Permiso Único 2022-433087-PU-143466 le ha afectado o lo va a afectar. A modo de ejemplo, el expediente que revisamos se encuentra huérfano de evidencia sustancial que acredite que el flujo vehicular aumentará, o que la seguridad de los residentes estará comprometida, o que el valor de las propiedades disminuirá. Como esbozamos antes, nuestro sistema de justicia exige a las partes probar su legitimación en todas las etapas, ya que un participante pudo haber tenido un interés legítimo para interceder en el procedimiento administrativo, pero ello no asegura que ostente legitimación activa como parte para instar un recurso de revisión judicial. Ciertamente, no nos convence que la parte recurrente haya satisfecho las exigencias de su legitimación activa. Sin embargo, dado que trajo a nuestra atención la cuestión de la nulidad del Reglamento Conjunto 2020, nos expresamos.

En cuanto al señalamiento de error planteado, el Artículo 15.1 de la Ley 161-2009 ordena a la Junta de Planificación a preparar y a adoptar, junto a otras entidades gubernamentales, un reglamento conjunto. 23 LPRA sec. 9025. A la luz de dicha disposición, la Junta de Planificación promulgó el *Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios*, Reglamento Núm. 9233 de 2 de diciembre de 2020 (Reglamento Conjunto 2020), efectivo el 2 de enero de 2021. No obstante, al palio de la Sección 2.7 de la LPAUG, 3 LPRA sec. 9617, en el caso *Fideicomiso de Conservación de Puerto Rico y Para la Naturaleza, Inc. v. ELA y otros*,

KLRA202100047, un panel de este foro intermedio dictó un fallo de nulidad contra el Reglamento Conjunto 2020. En ese pleito, sin embargo, **el 6 de julio de 2021, el Tribunal Supremo de Puerto Rico expidió el auto de *certiorari* discrecional ante sí presentado por la OGPe, como parte peticionaria e interventora (CC-2021-0418)**, quien planteó una cuestión de naturaleza jurisdiccional. **A la fecha del presente dictamen, la resolución del caso continúa pendiente ante el Alto Foro**, por lo que es forzoso concluir que el decreto de nulidad adolece de finalidad y firmeza.

Por otro lado, los recursos discrecionales que el Tribunal Supremo denegó expedir —los cuales son finales, firmes y cuyos mandatos fueron remitidos, en alusión a los casos CC-2021-0296[10] y CC-2021-0310[11]— no reflejan necesariamente la postura de la última instancia judicial ni son vinculantes. Al respecto, el Artículo 4.005 de la *Ley de la Judicatura de 2003*, Ley Núm. 201 de 22 de agosto de 2003 (Ley 201-2003), 4 LPRA sec. 24x, establece que "[l]as sentencias y resoluciones del Tribunal de Apelaciones estarán fundamentadas, serán publicables y podrán ser citadas con **carácter persuasivo**". (Énfasis nuestro.) La disposición encuentra eco en el inciso (D) de la Regla 11 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 11 (D). Esto es, **nuestras determinaciones no crean precedentes jurídicos**. En nuestro ordenamiento legal, solo compete al **tribunal de entronque constitucional**, el Tribunal Supremo de Puerto Rico, la facultad de pautar y unificar el Derecho. Véase, Art. V, Sec. 3, Constitución de Puerto Rico, LPRA, Tomo 1; Art. 3.0001, Ley 201-2003, 4 LPRA sec. 24r.

Ante este escenario, el 28 de enero de 2022, la Junta de Planificación emitió la *Resolución Núm. JPI-39-09-2022*, de la cual tomamos conocimiento judicial.[12] La Agencia ponderó los asuntos

---

[10] *Comité Pro-Seguridad ARRAQ y ARESPA y otro v. Junta de Planificación*, KLRA202100044.

[11] Petición de *certiorari* instada por la Junta de Planificación en el caso *Fideicomiso de Conservación de Puerto Rico y Para la Naturaleza, Inc. v. ELA y otros*, KLRA202100047.

[12] Refiérase a la Regla 201 (E) de las Reglas de Evidencia, 32 LPRA Ap. VI, R. 201 (E).

pendientes de adjudicación ante el Tribunal Supremo,[13] junto a la necesidad de impartir certeza a las operaciones diarias de la OGPe y los ayuntamientos investidos con las Jerarquías I a la V. La Junta de Planificación razonó que el Reglamento Conjunto 2020 continuaba vigente,[14] como sigue:

> [L]a Junta de Planificación, dentro de su facultad estatutaria e inherente de interpretar leyes y reglamentos vigentes e instrumentos de planificación, INTERPRETA Y ACLARA que el Reglamento Conjunto 2020 sigue vigente y su aplicación se extiende a toda la jurisdicción del Estado Libre Asociado de Puerto Rico, hasta tanto y en cuanto el Tribunal Supremo de Puerto Rico se exprese finalmente y emita una sentencia final sobre los *certiorari* expedidos y sometidos ante esta Alta Curia con los números de caso *Fideicomiso de Conservación de Puerto Rico y Para La Naturaleza Inc. v. [ELA y otros]*, CC-2021-0418 y el caso de *Aequitas, LLC v. Junta de Planificación*, CC-2020-00320.

De modo que, al justipreciar el error señalado sobre la presunta nulidad del Reglamento Conjunto 2020, debemos colegir que las determinaciones fraternas no nos obligan. Máxime cuando todavía la controversia sobre la nulidad se encuentra pendiente de adjudicación por el Alto Foro judicial. Consecuentemente, en observancia a la deferencia sustancial que merecen las agencias gubernamentales concernidas y hasta tanto el Tribunal Supremo no disponga otra cosa, se presume que el Reglamento Conjunto 2020 continúa vigente para efectos de la consideración de la controversia ante nuestra atención. Por consiguiente, el error no fue cometido.

No obstante, aun si acogiéramos la premisa de la parte recurrente, sobre la alegada improcedencia de evaluar el Permiso Único impugnado a base del Reglamento Conjunto 2020, entonces, correspondería atender la

---

[13] La pluralidad responde a que, en la *Sentencia* del caso *Aequitas, LLC. v. Junta de Planificación*, KLRA201900413, se declaró la nulidad del Reglamento Conjunto 2019. En ese litigio, el Tribunal Supremo expidió el *certiorari* solicitado (CC-20-0320) y el caso continúa pendiente de resolución.

[14] Con relación al caso CC-2021-0418, en el que se examina la nulidad del Reglamento Conjunto 2020, el 31 de octubre de 2022, el Tribunal Supremo emitió una *Resolución* (AC-2022-0093) para acoger el recurso de apelación y auxilio de jurisdicción presentado por la Junta de Planificación como una petición de *certiorari* en el caso *Comité Pro-Seguridad ARPAQ y ARESPA y su Presidenta Vanessa D. Ríos Grajales v. Junta de Planificación*, KLAN202200198. En su pronunciamiento, el máximo tribunal paralizó los procedimientos, "hasta tanto este Tribunal emita su determinación en el recurso *Fideicomiso de Conservación de Puerto Rico y para la Naturaleza, Inc. v. ELA y otros,* CC-2021-0418, o hasta que se disponga otra cosa".

petición de Respaldo de Amor bajo las disposiciones del *Reglamento Conjunto de Permisos para Obras de Construcción y Usos de Terrenos*, Reglamento Núm. 7951, efectivo el 29 de noviembre de 2010 (Reglamento Conjunto 2010).   Nótese que, en este caso, la parte recurrente no contravino en absoluto los fundamentos de la decisión administrativa, sino solo el hecho que estos surgieran de la reglamentación presuntamente anulada. Luego de un examen de las disposiciones normativas del Reglamento Conjunto 2010, es evidente que la expedición del Permiso Único se sostiene con todo vigor. Veamos.

Según reseñamos antes, la decisión recurrida avaló el Permiso Único expedido por el Municipio. Conforme a la Ley 161-2009, un Permiso Único permite el inicio de una operación de una actividad incidental al mismo y en el que se consolidan permisos, autorizaciones o certificaciones. La base legal para la expedición del Permiso Único del epígrafe descansó en que el uso solicitado por la parte recurrida, para establecer un Hospedaje Especializado, estaba permitido ministerialmente en el Distrito de Calificación Residencial Intermedio. Según se define en el Reglamento Conjunto 2010, un Hospedaje Especializado consiste en una instalación donde se provee alojamiento a personas con algún tipo de incapacidad y a quienes se les brinda algún tratamiento. Véase, Capítulo 4, Reglamento Conjunto 2010 (H) 5.[15] En el caso de Respaldo de Amor, los seis adultos jóvenes tienen discapacidades físicas o intelectuales y un equipo multidisciplinario les proveerá actividades diarias en un área menos restrictiva.

En el caso de autos, además, no está en controversia que la propiedad inmueble, sita en el lote 12 de la Urbanización Paseos de Jaicoa, está en un Distrito calificado como Residencial Intermedio. Este distrito de densidad poblacional intermedia se establece para identificar áreas residenciales desarrolladas o que puedan desarrollarse y en donde se permiten diferentes tipos de viviendas. Véase, Sección 19.3.1, Reglamento

---

[15] Véase Tomo XII-III (H) 6 del Reglamento Conjunto 2020.

Conjunto 2010.[16] **Entre los usos permitidos en el Distrito Residencial Intermedio se encuentra el Hospedaje Especializado**. Véase, Sección 19.3.2 (e), Reglamento Conjunto 2010.[17] En cuanto al área de estacionamiento en un Distrito Residencial Intermedio, la Sección 19.3.5 del Reglamento Conjunto 2010 refiere al Capítulo 24. En su parte pertinente, la Regla 24.1 del Reglamento Conjunto 2010 establece que las áreas de estacionamiento de vehículos serán provistas dentro de la pertenencia, bien sea en el edificio principal o en un área remanente del solar en que está ubicado. Añade que se podrá utilizar un patio requerido para tales propósitos siempre que no se obstaculice o afecte el tránsito o movimiento de vehículos en los accesos o áreas de viraje de tales áreas de estacionamiento. Los espacios de estacionamiento de Respaldo de Amor estarán ubicados en el mismo solar.

En fin, al tratarse de una **Determinación Ministerial**, ya que versa de un **permiso de uso** en una estructura existente, el Municipio no tenía que emitir un juicio subjetivo como el de las Determinaciones Discrecionales. La evaluación ministerial se suscribía a **observar los estándares fijos y objetivos, según consignados en las disposiciones legales y reglamentarias aplicables**. A esos efectos, toda vez que el uso propuesto para establecer un Hospedaje Especializado está permitido en el Distrito Residencial Intermedio, la OGPe actuó correctamente al refrendar el Permiso Único expedido por el Municipio.

**IV**

Por los fundamentos que anteceden, se confirma la *Resolución de Revisión Administrativa* recurrida.

Lo acordó el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[16] Véase Sección 6.1.3.1 del Reglamento Conjunto 2020.
[17] Véase Sección 6.1.3.2 del Reglamento Conjunto 2020.